BOWLES

*v.*

ALLEN *et al.*

(*Supreme Court of Appeals of Virginia, April 3, 1895.*)

[21 S. E. Rep. 665.]

**Real-Estate Brokers—Recovery of Commissions.**

Where, by a contract in regard to the sale of property, a broker arranges with all the parties that his compensation shall be paid in certain stock of a company to be formed by him and others to buy the land, he cannot hold the vendors responsible for the amount of such compensation.

Appeal from circuit court, Page county.

Action by John Bowles against Stephen M. Allen and George H. Pollock for breach of contract. From a decree for defendants, plaintiff appeals. Affirmed.

*W. Willoughby,* for appellant.

*A. R. Blakey* and *R. B. Lewis,* for appellees.

RIELY, J., delivered the opinion of the court.

Alzire A. Chevallier, in whom was vested the legal title to a tract of land of 5,371 acres lying in Page and Madison counties, on that part of the Blue Ridge Mountains called "Stony Man," employed John Bowles, a real-estate agent who resided in the city of Washington, to sell it for her. Her price was $50,000, and she agreed to pay him a commission of

10 per cent. The contract between them for this purpose was made on the 26th day of June, 1888, and given by her in the form of an option to John Bowles to buy said land within one year for the sum of $50,000, of which $10,000 was to be paid in cash, and if credit was desired for the residue of the purchase money it was to be secured by a mortgage on the land. He did not make a sale of the land within the year, and the option and employment to sell the land expired by limitation. She resided in the state of Massachusetts, and when the option expired he endeavored to obtain from her another contract to sell the land. He went to Boston, Mass., for this purpose. He failed to see her, but had several interviews with her agent and attorney, Stephen M. Allen. He succeeded in obtaining from Allen on the 1st day of July, 1889, an agreement in writing for the sale of the land to himself and other persons, not named, as representatives of the Stony Man Park Association, for the sum of $2,000, to be paid her within three months, and 5,000 shares of the capital stock of the said association, of the par value of $500,000, of which Bowles was to receive 500 shares "as compensation for his past and future services in the sale of said tract of land." This contract was signed with the name of A. A. Chevallier, by her attorney, Stephen M. Allen, and by John Bowles. Allen was reluctant to enter into the contract, and made it a condition that it should be subject to the approval of George H. Pollock, to whom Bowles was to show it on his return to Washington. If Pollock dissapproved of it, the contract was to be at an end, and returned by Bowles to Allen. Pollock refused to give it his approval. Bowles failed, however, to return it to Allen. When afterwards reminded by Allen that he had not returned it, he said that he had mislaid it, but, as Pollock had refused to agree to it, it was of no value. In spite of the failure of this scheme for the sale of the land, Bowles endeavored to obtain still another contract for its sale, and proposed another scheme, by which Alzire A. Chevallier was to convey the land

to John Bowles, George H. Pollock, and Stephen M. Allen, as trustees for a new company, to be chartered under the name of the Blue Ridge Park Association. An agreement was drawn up between such association, of the one part, and the said Bowles, Pollock, and Allen, as trustees, of the other part, bearing date on the 24th day of August, 1889, in which it was set forth that they were to buy and hold the said land for such association on certain terms and conditions. It was stipulated that the land was to be paid for with 5,000 shares of the stock of the company, as full paid up stock (but for which nothing was ever paid), of the par value of $100 each ; that 371 acres of the land were to be set apart as a town site, and divided into lots, and from the sale of the lots and a part of the said stock $50,000 was to be raised, and paid to the proprietors of the land. Bowles, Allen, and Pollock were each to receive 1,000 shares of said stock as their own property. This agreement was not executed by all the parties, but was repudiated by Pollock and Allen before its delivery, and never became operative upon them. A deed bearing the same date, to wit, August 24, 1889, conveying the property to the said trustees in accordance with such plan, was executed by Alzire A. Chevallier, and intrusted to Allen, her agent and attorney, but not to be delivered by him unless a sale of the land was made, by which she would get her money. When Pollock refused to sanction the scheme for the sale of the property to the Blue Ridge Association, and erased his signature to the agreement, Allen made no use of this deed, but canceled it. Allen and Pollock refused afterwards to consider further the schemes of Bowles, and all negotiations for the sale of the land terminated. The Blue Ridge Park Association then instituted its suit in chancery in the circuit court of Page county against Chevallier, Allen, Pollock, and Bowles, to compel a specific performance of the alleged contract for the sale of the land ; and at the same time Bowles brought suit against Allen and Pollock for $100,000, the par value of the stock which he was to receive if the scheme for

the sale of the property to the said association had been carried out.   He brought his suit against Allen and Pollock as the equitable owners of the land, it appearing that Alzire Chevallier merely held the legal title to secure the payment of the sum of about $2,000 which she had paid out for taxes on the land, and based his claim on the agreement of the 24th of August, 1889, which, as we have seen, was not perfected by execution and delivery, so as to be operative and binding on those who were to become parties to it.

The depositions of many witnesses were taken, which, it was agreed, should be read in each suit, and the two causes were heard together.   The evidence is voluminous and contradictory, and any attempt to analyze it would be unprofitable discussion. At the hearing the court, by a joint decree entered in both causes, dismissed both bills.   An appeal was taken in each case, but that of the Blue Ridge Park Association was abandoned. The effect of the dismissal of the bill in that case was to hold that no valid sale was made of the land.   The decree of the court is presumed to be right ; and, no sale having been made,—at least, no valid sale of the land, none which the circuit court would enforce,—the decree of the court dismissing the bill in that case would seem to conclude all pretension on the part of Bowles to compensation for having made a sale of the land.

But, aside from that view, the agreement of the 24th of August, 1889, not only never became operative on Allen and Pollock, by reason of the failure to execute and deliver it, but does not contain any promise by them, or either of them, to pay him for his services in organizing a joint-stock company for the purchase of the property, and there is nothing in it from which it can be implied.   That was not in contemplation by him.   He looked for his compensation to the large interest he was to have in the company if it could be successfully foisted on the public.   No sale was in fact ever effected by him, and he consequently earned no commission or compensation.   But he claims that it was not his fault that the sale

was not made, as contemplated by him, to the Blue Ridge Park Association, but that it fell through by the refusal of Allen and Pollock to accept the scheme of sale, and to sanction and ratify what he had brought about, and that, therefore, he ought not to be deprived of all remuneration for his services. The only contract he ever had was to sell the land for money,— for $50,000. This amount, or a considerable part of it, was required to be paid in cash, and any sum not paid to be safely secured. There is no evidence that he ever attempted to make the sale for the said price in the usual way of a real-estate agent, but that his whole effort was directed to the formation of a company for its purchase at a fictitious value, and to be paid for in stock of the company, which would have no basis of value, except the land itself. The land was to be sold for $50,000, which was an exorbitant price for it. It was to be bought by a company chartered and organized by Bowles solely for its purchase, and capitalized at $500,000, which was 10 times the exorbitant price asked for it by the owners. And they were to be dependent for their purchase money on the sale of town lots, into which the town site was to be divided, and from the sale of a part of the stock. Bowles was to get one-fifth of the whole capital stock, which he claims in his bill would have been worth $100,000,—just twice the price asked by the owners for the whole land. Pollock and Allen were justified in refusing to risk the sale of their property to a company upon a scheme which showed upon its face that it was exceedingly speculative and visionary, and vitiated by illegality. The claim asserted by Bowles in his bill against Allen and Pollock for services in attempting to dispose of the said land is without merit. He does not show that he made any sale of which they have taken advantage, or ought to have accepted. The circuit court of Page county rightly dismissed his bill, and the decree appealed from must be affirmed.